UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :

THE FEDERAL DEPOSIT INSURANCE       :
COMPANY, as Receiver for AmTrust Bank  :
                                            :
          Plaintiffs,                      :         CASE NO. 1:11-CV-371
                                            :
    v.                              :         OPINION & ORDER
                                            :         [Resolving Doc. Nos. 36 & 37]
OLD REPUBLIC INSURANCE                :
COMPANY                                       :
                                            :
          Defendant.                   :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Federal Deposit Insurance Company (FDIC), as receiver for AmTrust Bank, alleges that defendant Old Republic Insurance Company (Old Republic) breached its insurance contract and wrongfully denied coverage for over $46 million in mortgage insurance claims. The parties filed cross motions for summary judgment. *See* [Doc. 36; 37.] For the following reasons, the Court GRANTS IN PART FDIC's motion and DENIES Old Republic's motion.

I.

The facts of this case are largely undisputed. On January 29, 2007, Old Republic issued Credit Insurance Policy No. V24 (the "Policy") to AmTrust Bank (formerly known as Ohio Savings Bank). [Doc. 35]; *see also* [Doc. 36-2.] The Policy insures AmTrust against defaults on mortgage loans AmTrust issued to borrowers.

Sometime in the next few years, AmTrust made costly financial mistakes, and on December 4, 2009, the federal Office of Thrift Supervision appointed FDIC Receiver for AmTrust. On that

Case No. 1:11-CV-371
Gwin, J.

same date, FDIC entered into a Purchase and Assumption Agreement with New York Community Bank (NYCB). That Agreement transferred certain home-equity loans covered under the Policy from the FDIC to NYCB. NYCB was not, and is not, insured by Old Republic.

On February 22, 2010, Old Republic sent FDIC a "Policy Termination Notice," stating that Old Republic was terminating the Policy as of December 4, 2009. In terminating its coverage after claims against the Policy had accrued, Old Republic said the FDIC's transfer of some of the insured loans to NYCB permitted it to end coverage. Apparently, FDIC had transferred 9,900 performing loans (of the approximately 10,600 home-equity loans AmTrust had insured with Old Republic) to NYCB and had retained only "non-performing" loans.[1] Old Republic informed FDIC that the transfer had "radically and materially altered the risk to be insured under the policy." [Doc. 36-4.] Old Republic says this allowed termination of the Policy. FDIC disputed the termination, and continued to submit claims to Old Republic for the coverage of losses on defaulted loans. According to FDIC, Old Republic has wrongly denied more than 750 claims worth, in total, more than $46 million.

On February 18, 2011, FDIC filed a complaint alleging that Old Republic breached the contract and seeking declaratory judgment. [Doc. 1.] The parties have made cross-motions for summary judgment: 1) each party makes a self-serving interpretation of Old Republic's cumulative limit of liability under the Policy and asserts that its interpretation is the only reasonable one; 2) FDIC asserts that Old Republic could not terminate the Policy in the manner it purported to in February 2010; and 3) FDIC asserts that the parties' agreement is limited to the Policy and that Old

---

[1] There are some inconsistencies in the record as to the number of loans Old Republic insured and the number of loans FDIC transferred to NYCB. *Compare* [Doc. 1-2 at 2], *with* [Doc. 20 at 9]. For the purposes of this motion, the precise numbers are irrelevant.

Case No. 1:11-CV-371
Gwin, J.

Republic may not rely on provisions in a "Credit Indemnity Insurance Proposal."

II.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court "draws all reasonable inferences in favor of the nonmoving party." Lenscrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005). Old Republic and FDIC, who agree on little else, apparently agree that Ohio law governs the Policy.

III.

*A. Cumulative Limit of Liability*

In Ohio, "[t]he question of whether the language of a written agreement is ambiguous is one of law . . . [, but] the interpretation of such language, once held to be ambiguous, is a factual issue turning on the intent of the parties." Parrett v. Am. Ship Bldg. Co., 990 F.2d 854, 858 (6th Cir. 1993). Accordingly, summary judgment is "proper only when the documents in question are undisputed and reveal that no question exists as to intent." Id. Old Republic and FDIC disagree about the meaning of the contractual language regarding Old Republic's cumulative limits of liability. Generally, FDIC believes that Old Republic's cumulative limit of liability is very large because it amounts to roughly 10% of the net proceeds of all 10,600 loans AmTrust had insured. Old Republic, on the other hand, believes that its cumulative limit of liability is much lower—roughly 10% of net proceeds of the 700 loans FDIC retained. Whether the transferred loans count toward Old Republic's cumulative limit of liability depends on the meaning of certain Policy provisions.

Old Republic argues that loans sold or transferred are not included in the calculation of its

-3-

Case No. 1:11-CV-371
Gwin, J.

cumulative limit of liability. Citing Endorsement 4, Old Republic maintains that its cumulative liability is limited to 10% of the Aggregate Net Proceeds, calculated as the "sum of the Net Proceeds of all Loans first insured during a Policy Period, reduced by the sum of the net proceeds of all such loans sold or transferred as permitted under the policy." [Doc. 36-2.] Old Republic says that Endorsement 4 fits logically with Endorsement 15:

> All liability for loss under this Policy with respect to any individual Loan shall terminate upon sale or transfer of such Loan . . . . In the event of such a sale or transfer, the insured net proceeds reported to [Old Republic] by the Assured for the same liability period shall be reduced by insured net proceeds of all such loans.

[Doc. 36-2.] Accordingly, Old Republic argues, the "Aggregate Net Proceeds" (and therefore its cumulative limit of liability) does not include the net proceeds from the loans FDIC transferred to NYCB. Old Republic maintains that its interpretation is logical, saying that the contrary interpretation would permit an Insured to obtain a very large limit of liability, sell 99% of its Old-Republic-insured loans, and then collect insurance on far more than 10% on the few remaining loans.

FDIC disagrees and argues that Old Republic's cumulative limit of liability is reduced only when loans are transferred to another entity already insured by Old Republic. First, FDIC counters that the above-referenced portion of Endorsement 15 misconstrues the endorsement. FDIC says that the "In the event of such a sale or transfer," language actually refers to a portion of Endorsement 15 that Old Republic omitted: "Such sales or transfers may be made to a transferee holding a similar Policy issued by [Old Republic] only with the prior written approval of [Old Republic]." [Doc. 36-2 at Endorsement 15.] Thus, FDIC says, its transfers of loans to NYCB (which is not insured by Old Republic) did not reduce Old Republic's cumulative limit of liability. FDIC reasons that this makes good sense because without that reduction, transfer to another Old Republic insured would result in

Case No. 1:11-CV-371
Gwin, J.

double liability.

Furthermore, FDIC points out, Endorsement 4 provides that Old Republic's cumulative liability "shall remain fixed and shall apply to all Loans first insured during that Policy Period until all such Loans are sold, transferred, prepaid or liquidated." [Doc. 36-2.] Thus, FDIC says, the cumulative liability is fixed during a Policy Period, and plainly does not fluctuate after every loan transfer or sale. FDIC concludes that Old Republic's cumulative limit of liability includes all loans Old Republic insured during the twelve-month policy period and includes the net proceeds from the loans transferred to NYCB.

Despite the parties' vigorous arguments to the contrary, the Court concludes that both FDIC and Old Republic offer entirely reasonable interpretations of this sloppily drafted contract. Viewing the Policy "as a whole," *Royal Insurance Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008), the Policy's meaning as to Old Republic's cumulative limit of liability, "cannot be determined from the four corners of the agreement," *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003).[2] Accordingly, the Policy is ambiguous and it is "for the jury to determine the meaning of its terms." *Royal Ins. Co. of America*, 525 F. 3d at 422.

B. *Old Republic's Termination of the Policy*

FDIC also argues that summary judgment is appropriate on the issue of whether Old Republic's termination of the Policy was effective. Old Republic attempts, but fails, to argue persuasively that it could terminate the policy.

---

[2] Neither FDIC nor Old Republic argues that the Policy is ambiguous, and the parties have not submitted extrinsic evidence that would allow the Court to determine their intent. *See Covington*, 784 N.E.2d at 190 ("If an ambiguity exists in a contract, then it is proper for a court to consider 'extrisic evidence' . . . in determining the parties' intent.")

Case No. 1:11-CV-371
Gwin, J.

Old Republic's February 22, 2010, letter claimed that the policy was "terminat[ed]" as of December 4, 2009 (the date when FDIC transferred the loans to NYCB). *See* [Doc. 37-4.] After FDIC disputed that termination, Old Republic reiterated, on March 5, 2010, its position that the Policy had terminated effective December 4, 2009.

As an initial matter, the Court agrees with FDIC that Ohio Rev. Code § 3937.25—governing cancellation of "commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds, medical malpractice insurance and automobile insurance"—does not apply to this Policy. Neither party, however, has directed the Court to another statute governing cancellation of insurance policies such as this one. And, "[i]t is fundamental that in the absence of any controlling statute, the cancellation of an insurance policy and the respective rights of the parties 'are as fixed by the contract as set forth in the policy.'" *Canter v. Christopher*, 609 N.E.2d 609, 611 (Ohio Ct. App. 1992).

As set forth in the Policy, cancellation by Old Republic is possible "by mailing to the Assured . . . written notice stating when, not less than five days thereafter, such cancellation shall be effective." [Doc. 36-2 at 3, ¶14.] The Policy further provides that "Cancellation of this Policy shall not affect the insurance privilege of the Assured with respect to any loan previously reported for insurance, and the Assured shall continue to remit monthly premium payment with respect to all such Loans."[3/] [Doc 36-2 at Endorsement 17.] Finally, "[a] claim for Loss may be filed as to an individual Loan at any time after Default . . . ." [Doc. 36-2 at Endorsement 13.]

Nowhere does the Policy allow for retroactive termination of loans that are already in default;

---

[3/] According to FDIC's complaint, AmTrust had paid all required premiums, and FDIC has made (or attempted to make) all premium payments since that time. Apparently, Old Republic has made some attempt to return premium payments after the March 5, 2010, letter. FDIC says it refused the refunds.

Case No. 1:11-CV-371
Gwin, J.

nowhere does Old Republic cite to an Ohio statute allowing such termination. To the contrary, Ohio has a "paternalistic public policy," *Loxley v. Motorists Mutual Insurance Co.*, 2004 WL 1587041 at *9 (Ohio Cr. App, July 9, 2004), regarding insurance contracts and mandates that insurers cannot "validly cancel[] the policy retroactive to a date prior to," a date when a claim could be made. *Id.* FDIC, who fails to explain that the "non-performing" loans it retained were actually in default as of December 4, 2009, is assisted by Old Republic's motion for summary judgment. Old Republic helpfully explains that FDIC's transfer to NYCB left "only loans in default in the portfolio." [Doc. 36-1.] Even on December 3, 2009, then, FDIC (or AmTrust) could have filed claims for loss on all 700 defaulted loans. *See* [Doc 1.]

Other than appealing to general principles of contract interpretation, Old Republic provides no basis for its assertion it could unilaterally terminate, retroactively, FDIC's insurance. Presumably, Old Republic was fully aware of how it could validly cancel that policy: with 5 days' notice and without affecting coverage of any loan previously insured. That cancellation clause would have no meaning if Old Republic could simply rescind the policy at any moment, and subsequently deny all claims. Under the Policy, Old Republic could not, on February 22, 2010, retroactively terminate the Policy and FDIC's insurance as of December 4, 2009. Accordingly, summary judgment for FDIC is appropriate on this issue.[4]

C. *Proposal Provisions*

Finally, FDIC seeks summary judgment that Old Republic is not permitted to "rel[y] on

---

[4] Even were the Court inclined to agree with Old Republic (and it is not) that it could retroactively terminate the policy, the Court would still conclude that FDIC did not materially breach the contract. As FDIC correctly points out, the Policy specifically envisions, and allows for, transfers of loans reported for insurance under the policy. The mere fact that FDIC transferred some 95% of those loans is of no consequence. Moreover, even had FDIC retained all of AmTrust's loans (and had not transferred any to NYCB), Old Republic would still have been required to cover the loss of the approximately 700 loans in default. The transfer away of the "good" loans, while perhaps depriving Old Republic of some premium payments, did not cause or change its liability on the "bad" loans.

Case No. 1:11-CV-371
Gwin, J.

conditions, representations, and warranties that are not found within the Policy." FDIC argues that Old Republic cannot rely on provisions of a separate document, the "Credit Indemnity Insurance Proposal and Terms for: Ohio Savings Bank, Revision to Proposal Dated 1/10/2007" ("the Proposal") to mitigate its liability. Generally, FDIC says that the Proposal is not incorporated in the Policy, and asks that the Court grant summary judgment to that effect.

A bit of Policy history helps. On January 19, 2007, an Ohio Savings Bank (predecessor to AmTrust, and later, FDIC) representative signed the Proposal, as did Old Republic's President. The five-page Proposal sets out, among other things, Ohio Saving's Bank's underwriting requirements (such as "Investment properties were allowed with . . . Maximum [Combined Loan to Value] 90%), and certain representations, warranties, and covenants. [Doc 36-2 at 33.] Ten days later, Old Republic and Ohio Savings Bank representatives signed the Policy.

Ohio's parol evidence rule provides that "absent fraud, mistake or some other invalidating cause, prior or contemporaneous oral agreements may not be used to alter, contradict, contest, or vary an integrated written agreement." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 455 (6th Cir. 2005) (citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000)). And a writing is presumed integrated where it "contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding . . . ." *Deutsche Bank Nat'l Trust Co. v. Pevarski*, 932 N.E.2d 887, 900 (Ohio Ct. App. 2010).

As FDIC correctly points out, the Policy embodies is the final expression of the parties' agreement and contains a written integration clause:

> This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated which are hereby made part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

-8-

Case No. 1:11-CV-371
Gwin, J.

[Doc. 36-2 at 1.] That language does contemplate additions to the Policy (e.g. the endorsements) but limits the parties' agreement to what is "provided in [the] Policy." The Court therefore concludes that the Policy is the "final written integration of [the parties'] agreement." *Glazer*, 394 F.3d at 455. Accordingly, the Ohio's parol evidence rule bars Old Republic from mitigating its liability with Proposal provisions contrary to the Policy provisions.[5]

IV.

For the foregoing reasons, the Court GRANTS summary judgment to FDIC on two issues: 1) Old Republic could not retroactively terminate the Policy, and 2) Old Republic cannot avoid liability based on Proposal terms contradictory to Policy terms. The Court DENIES the remainder of FDIC's summary judgment motion and DENIES Old Republic's motion for summary judgment.

IT IS SO ORDERED.


Dated: April 16, 2012                           s/         *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[5] Old Republic is not, of course, precluded from arguing that the Ohio Savings Bank's "fraudulent concealment or misrepresentation," *Northpoint Properties v. Charter One Bank*, 2011 WL 2112666 at *13 (Ohio Ct. App. May 26, 2011), "induced the written contract," *id.* (citing *Galmish*, 90 Ohio St. 3d at 28).

-9-